UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Dylan Watkinson

    v.                                      Civil No. 12-cv-501-JL
                                          Opinion No. 2013 DNH 161
Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration

**SUMMARY ORDER**

    Dylan Watkinson has appealed the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income, which claimed an onset date of April 2010. An administrative law judge at the SSA ("ALJ") ruled that, despite Watkinson's severe impairments (including, inter alia, obesity, chronic lower back pain, and edema), he retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council later denied Watkinson's request for review of the ALJ's decision, see id. §§ 404.968(a), 416.1479, so the ALJ's decision became the SSA's final decision on Watkinson's application, see id. §§ 404.981, 416.1481. He appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Watkinson has filed a motion to reverse the decision, see L.R. 9.1(b)(1), challenging the ALJ's RFC assessment as unsupported by substantial evidence. The Commissioner of the SSA has cross-moved for an order affirming the decision, see L.R. 9.1(d), defending the ALJ's assessment of Watkinson's RFC. For the reasons explained below, the court denies Watkinson's motion, and grants the Commissioner's.

The ALJ found that Watkinson had the RFC to perform sedentary work, see 20 C.F.R. §§ 404.1567(a), 416.967(a), with certain limitations, including that he can only "occasionally balance, stoop, kneel, crouch or crawl" and "requires a sit[/]stand option every hour for one to two minutes at a time." Watkinson argues that, in so assessing his RFC, the ALJ improperly gave little weight to the opinions of three of his treating physicians: Dr. Joseph Fuller and Dr. Robert D'Agostino, both of whom served (at different times) as Watkinson's primary care provider, and Dr. Robert Silver, his treating endocrinologist.

At a visit to Fuller in June 2010, Watkinson complained of "joint pain, stiffness, arthritis, low back pain with radiation into his right leg, hip pain, knee pain, ankle swelling with pressure and pain, and an inability to stand for more than a few minutes at a time." Fuller noted edema in Watkinson's ankles.

Fuller also observed that Watkinson "has pain with almost any activity, [and] had difficulty getting on and off of the examination table," and that his "[r]ange of motion in the hips and the knees is somewhat restricted by pain and discomfort." Fuller, who also noted that Watkinson was applying for Social Security Disability benefits, concluded, "I would judge that this patient does have near total disability, as he is unable to stand for more than a short period of time, cannot repetitively lift, bend, or twist[], and his chronic ankle edema requires elevation of his legs much of the time."

In giving this opinion little weight, the ALJ stated that "the issue of disability is reserved to [him]" and that "Fuller's assessment is vague in that it broadly quantified [Watkinson's] functional limitations." Watkinson's motion to reverse the ALJ's decision does not say why Watkinson believes that this analysis was in error. Watkinson says simply that "[a]s a long-term treating source for plaintiff, Dr. Fuller was in the best position to determine [Watkinson's] limitations."

It is true, of course, that an ALJ must give "controlling weight" to "a treating source's opinion on the issue(s) of the nature and the severity of [the claimant's] impairment(s)," so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

3

the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); see also id. § 404.1527(c)(2). But this rule does not apply to opinions as to the ultimate issue of the claimant's disability, see id. §§ 404.1527(d), 416.927(d), so Fuller's status as a treating source did not require the ALJ to accept Fuller's statement that Watkinson has "near total disability," as the ALJ noted. Fuller also opined that Watkinson had certain functional limitations, but--as the Commissioner points out--so did the ALJ.

Again, the ALJ found that Watkinson was limited to sedentary work, which "is defined as [a job] which involves sitting," 20 C.F.R. § 404.1567(a), 416.967(a), for, in general "about 6 hours of an 8-hour workday," Titles II and XVI: Determining Capability to Do Other Work, SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. 1996), and does not require repetitive bending, twisting, or lifting, id. at *6-*8. So this finding would appear consistent with Fuller's opinion that Watkinson "is unable to stand for more than a short period of time, [and] cannot repetitively lift, bend, or twist."[1] In any event, in ruling that Watkinson's RFC left him able to perform jobs existing in significant numbers in the

---

[1]The finding is also consistent with Fuller's opinion, expressed in July 2009, that Watkinson was "unable to work on his feet more than three or four hours at a time due to ankle edema." Again, a sedentary job would not require Fuller to spend nearly that much time standing.

4

national economy, the ALJ relied on the testimony of a vocational expert (which Watkinson does not challenge) that all such jobs "allow at-will sitting or standing" and "do not require lifting more than 10 pounds." It is unclear, then, what limitations Watkinson faults the ALJ for not finding despite Fuller's opinions and, again, his motion does not specify.[2]

Watkinson also criticizes the ALJ's decision to give little weight to the opinions of Silver, the treating endocrinologist. As the ALJ found, however, Silver identified "exertional limitations even less restrictive than those determined" by the ALJ himself, including that Watkinson "could sit, stand, and walk at least six hours in an eight-hour day" and "did not need a job that would allow him to shift from sitting, standing, or walking at will, and did not need to include periods of walking." While Silver identified two additional limitations, i.e., Watkinson's

---

[2] Fuller also opined that Watkinson's edema "requires elevation of his legs much of the time," but (as the ALJ suggested by disregarding Fuller's opinions as "vague") did not further specify. In any event, as the Commissioner points out, both D'Agostino (who became Watkinson's primary care provider after he stopped seeing Fuller) and Silver (Watkinson's endocrinologist) specifically opined that he did not need to elevate his legs, even with "prolonged sitting." In light of this contrary opinion evidence from other treating physicians, the ALJ did not err in rejecting Fuller's opinion that Watkinson needed to elevate his legs "much of the time." See, e.g., Gaudet v. Astrue, No. 11-11894, 2012 WL 2589342, at *6 (D. Mass. July 5, 2012) ("Where a treating physician's opinion is inconsistent with . . . the opinions of other treating physicians, the conflict is for the ALJ . . . to resolve.").

need for "unscheduled work breaks of 10 minutes or more before meals and . . . more than four days off per month," the ALJ rejected that aspect of Silver's opinion because "the record, including [Watkinson's] own testimony, does not support" it and that, in fact, he "has good control of his diabetes." Watkinson does not identify anything in the record contradicting that point; he refers to Fuller's opinions, but, so far as the court can tell from the record, Fuller expressed no view on Watkinson's need to take breaks before meals or miss any number of days of work per month (and, as just discussed, the ALJ properly rejected Fuller's opinion that Watkinson could not work at all).

Watkinson also argues that the ALJ improperly gave little weight to certain of D'Agostino's opinions. The ALJ observed that D'Agostino found not only "some sedentary limitations consistent with those determined" in the ALJ's RFC assessment, but also that Watkinson "would need to walk every 90 minutes up to 30 minutes at a time with four to six unscheduled work breaks. Little weight goes to [this] portion of [the] opinion because the record provides little support for it."

Watkinson claims that, in fact, the necessary support came from a "Functional Capacity Assessment" performed by Jane O'Connor, who identified herself as an "Assessment Specialist" at "Rehab 3 Rochester, a department of Frisbie Memorial Hospital."

6

As an initial matter, though, the "Functional Capacity Assessment" says nothing about Watkinson's need to spend 30 minutes out of every 90 minutes walking or to take unscheduled breaks; to the contrary, O'Connor stated that Watkinson was capable of sitting 6 to 7 hours with "no apparent limitations" and just "regular breaks." O'Connor nevertheless stated, without explanation, that Watkinson was capable of a work day of just 3 to 4 hours. Thus, as the ALJ noted in giving little weight to O'Connor's opinion, it was "internally inconsistent," as well as rendered by someone whose "professional qualifications were vague" (aside from identifying O'Connor as an "assessment specialist," the "Functional Capacity Assessment" does not say anything else about her, including whether she holds a degree or certificate in any relevant field).

Watkinson, in his motion, does not question either of the ALJ's criticisms of O'Connor's work.[3] In light of her apparent lack of credentials, O'Connor is not an "acceptable medical source," 20 C.F.R. §§ 404.1513(a), 416.913(a), so the ALJ was

---

[3]Watkinson complains that the ALJ did "not comment upon the fact that Dr. Fuller was apparently in agreement with this assessment when he provided a copy" to counsel for Watkinson. While counsel indeed received the Functional Capacity Assessment from Fuller, he transmitted it under cover of an unsigned letter which, on its face, gives no indication that Fuller even looked at the assessment, let alone that he agreed with it (nor is there any indication to that effect elsewhere in the record). The ALJ, then, was by no means required to draw such an inference.

required simply to analyze her opinion "based on the consideration of the probative value of the opinions and a weighing of all the evidence," and to "explain the weight given to" the opinion to "allow[] a claimant or subsequent reviewer to follow the [ALJ's] reasoning."  Titles II and XVI: Considering Opinions and Evidence From Other Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, SSR 06-03p, 2006 WL 2329939, at *5-*6 (S.S.A. 2006).  The ALJ followed that command in according O'Connor's opinions little weight, either on their own or as support for D'Agostino's opinions that Watkinson, while working, would need to spend one-third of his time walking and take as many as six unscheduled breaks.  See, e.g., Montero v. Colvin, No. 12-412, 2013 WL 4042424, at *1-*2 (D.N.H. Aug. 8, 2012) (finding that ALJ properly rejected non-medical source's opinion based on her lack of appropriate credentials and its inconsistency with other record evidence).  In any event, as just noted, the Functional Capacity Assessment does not support D'Agostino's opinions as to Watkinson's need to walk and take breaks anyway.

   Watkinson also complains about the ALJ's treatment of another provider who is not an "acceptable medical source" under the regulations, Lois Rich, a registered nurse who reviewed

Watkinson's application for disability benefits under New Hampshire's Medicaid program.  Rich opined that Watkinson "was unable to stand or walk for extended periods of time and that sitting increased his lower extremity edema"--limitations which, "in combination and . . . with obesity contributing to his conditions," left him "unable to work at present."  In giving this opinion little weight, the ALJ reasoned that--as Watkinson acknowledges--Rich "is not a treating source nor an acceptable medical source."  The ALJ further observed that Rich "relied on limited evidence for a one-time evaluation not reflective of the entire period at issue" and that her opinion "was not consistent with the overall record."  This approach is consistent with the legal requirements for the ALJ's treatment of "other source" opinions, as just discussed, see SSR 06-03p, 2006 WL 2329939, at *5-*6, and substantially supported by the evidence.  Watkinson protests that Rich's opinion that obesity left him unable to work was in fact "consistent with Dr. Fuller's numerous assessments of obesity impacting [Watkinson] adversely," but insofar as Fuller found Watkinson disabled due to obesity (and he does not point to any such finding in the record), the ALJ properly rejected Fuller's opinion that Watkinson was disabled, as already noted.

   Watkinson further argues that the ALJ erred in his "cursory assessment of the effects of [Watkinson's] obesity on his other

impairments." In determining a claimant's RFC, "[a]n assessment should . . . be made of the effect obesity has upon [his] ability to perform routine movement and necessary physical activity within the work environment." Titles II and XVI: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281, at *6 (S.S.A. 2002). Consistent with this directive, the ALJ specifically found that Watkinson's "morbid obesity with associated back pain and continuous edema[] contribute to the sedentary exertional limitations, sit/stand option, and postural . . . capabilities" identified in the ALJ's decision. Watkinson does not point to anything in the record suggesting that his obesity imposed greater limitations than those. So his argument that the ALJ improperly handled the issue of Watkinson's obesity is without merit. See, e.g., Lalime v. Astrue, 2009 DNH 053, 21-22 (Barbadoro, J.) (rejecting the argument that the ALJ failed to account for the claimaint's obesity where it was "clear that he considered that condition when evaluating her claim" and "absent any references from [the claimant] as to what limitations resulted from her obesity").

Finally, Watkinson faults the ALJ's finding that Watkinson's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent" with the ALJ's assessment of Watkinson's RFC. As

10

the ALJ noted, Watkinson testified at the hearing that "he is tired during the day, has difficulty standing for long periods, and has difficulty sitting for long periods."  It is, once again, unclear how that version of Watkinson's limitations differs from the ALJ's finding that he was capable of sedentary work with the option to stand or sit.  Regardless, contrary to Watkinson's suggestion, the ALJ did not rely on Watkinson's account of his activities (including daily driving, chores, and walks) to find that he was not disabled; the ALJ relied on that account to find that Watkinson's statements as to the limiting effects of his symptoms were not entirely credible.  That is an appropriate use of evidence of a claimant's activities.  See, e.g., Comeau v. Colvin, 2013 DNH 145, 23-24.  The ALJ acted within his discretion in finding that this evidence undercut any claim by Watkinson (and, again, it is not even clear that there was one) that he was incapable of full-time sedentary work, even with a sit-stand option and the other limitations recognized by the ALJ.  See, e.g., St. Louis v. Astrue, 2011 DNH 118, 28-29 (Barbadoro, J.).

For the foregoing reasons, Watkinson's motion to reverse the ALJ's decision[4] is DENIED, and the Commissioner's motion to

---

[4]Document no. 8.

11

affirm that decision[5] is GRANTED.  See 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  November 25, 2013

cc:  D. Lance Tillinghast, Esq.
     Robert J. Rabuck, AUSA

---

[5]Document no. 9.